ISRAEL PRESTON PEARLMAN *d.b.a.* STERLING SHOE COMPANY *vs.* EQUITABLE FIRE & MARINE INSURANCE COMPANY.
ISRAEL PRESTON PEARLMAN *d.b.a.* STERLING SHOE COMPANY *vs.* PHOENIX ASSURANCE COMPANY, LIMITED.

JANUARY 27, 1959.

PRESENT: Roberts, Paolino and Powers, JJ.

292

ROBERTS, J. These are two actions of assumpsit to recover upon two policies of insurance for loss allegedly resulting from hurricane damage. The cases were tried together before a justice of the superior court sitting with a jury and resulted in a verdict for the plaintiff in each case. Each case is here upon the defendant's exceptions to the denial of its motion for a directed verdict, to a portion of the trial justice's charge to the jury, and to the denial of its motion for a new trial. All the other exceptions have been expressly waived.

On August 31, 1954 plaintiff was conducting in Providence a retail business in the sale of shoes, hosiery, and other items. At that time the company had a policy of insurance with each defendant under the terms of which plaintiff's stock of merchandise was insured against loss due to fire with extended coverage for loss caused by windstorm. The said property was insured "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property * * * against all direct loss by fire * * *."

On the aforesaid date the city of Providence was struck by a hurricane which was accompanied by a tidal wave. As a result of the hurricane, plaintiff's stock of merchandise was extensively damaged, and during the storm the store was flooded. A portion of the merchandise was located on shelves below the high-water mark, and another portion thereof was upon shelves above the high-water mark. It is conceded by the parties that the damage to the merchandise which was located below the high-water mark was not within the terms of the policies, since it was not loss due

to windstorm, and no issue has been raised herein with respect to such flood damage. The merchandise which was located on shelves above the high-water mark was affected by wind-blown water and ocean spray, and the parties agree that the damage to this merchandise is windstorm loss within the policy coverage.

Because of the narrow issue raised, we will refer herein only to that evidence which pertains to the amount of loss. The sworn proofs of loss which plaintiff submitted to defendants in accordance with the terms of the policies were admitted in evidence. The amount of damage stated in these proofs of loss was the full value of the merchandise concerned.

The plaintiff's wife, who was an employee, testified that on the day of the hurricane the merchandise above the high-water mark was "soaking wet" as a result of wind-blown water. She further testified that immediately after the storm she and other employees of plaintiff examined each item of such merchandise. She stated: "* * * we got cloths and tried to wipe each shoe, and leave it in the open shelves to dry thinking we could salvage some of it, and save it, but even way up to the top of the ceiling the boxes were soaked." The plaintiff also presented the expert testimony of a chemist, who testified as to the effect of rain water and salt spray upon fabrics of the type contained in plaintiff's merchandise. In the opinion of this witness the damage to the merchandise would consist of "corrosion, rotting, swelling, and so on."

The amount of damages claimed by plaintiff was the actual cash value of the property immediately before the storm or, in other words, damages for total loss. Neither party presented any direct evidence that the merchandise possessed any cash value following the hurricane. The only evidence of monetary value upon which damages could be assessed was that pertaining to actual cash value of the merchandise prior to the storm.

All of the defendant's exceptions in each case are based upon the single argument that lack of evidence of the salvage value of the merchandise constitutes a fatal failure of proof. The contention which is strongly urged upon us is that the only damage proved is a partial damage to the merchandise, and that in order to assess the amount of such damage it is essential that there be evidence of the value of the property subsequent to the hurricane. It is argued that in the absence of such evidence there is no legal basis upon which the jury could assess damages. We think that such argument is not supported by the record before us.

We agree with defendants that the insured must prove the amount of damages claimed and that where a total loss is asserted the plaintiff has the burden of proving that such loss was in fact total. 21 Appleman Ins. L. & P., §12233, pp. 114, 115. We also accept the rule that where there is only a partial loss of the property, the measure of damages is the difference between the actual cash value of the property before the loss and the actual cash value thereafter. 3 Richards on Insurance, §502, p. 1610. However, once the plaintiff presents a prima facie showing of total loss, the burden is then upon the defendant to show that the amount of loss could have been reduced by salvage. *Assurance Co. of America* v. *Continental Savings & Bldg. Assn,* Tex., 8 S.W.2d 787; 21 Appleman Ins. L. & P., *supra*, p. 115. We think that in the instant case plaintiff made a prima facie showing of total loss.

The plaintiff's claim was based entirely upon such loss. The evidence indicates that the insured property was "soaked" and that this was caused, at least in part, by salt water. It was shown that salt water would have a "corroding" effect upon the fabrics in the insured merchandise. There was testimony that an attempt had been made to salvage the property. In our opinion this evidence was sufficient in law to raise the inference that a total loss had occurred. The mere fact that the merchandise was in ex-

istence after the storm does not, as defendants suggest, preclude a finding of total loss. If defendants wished to rely upon salvage value in reduction of plaintiff's damages the burden was upon them to show such salvage value.

It might be well to note that the policies in question insure against loss by fire and that windstorm damage is extended coverage only. The same policy language which applies to fire loss is, by the extended coverage provisions, made to apply also to windstorm loss. However, it is apparent that the condition of merchandise "totally destroyed" by fire will be substantially different from the condition of merchandise "totally destroyed" by windstorm. In either case the same language in the policies applies, and they must be reasonably construed to allow for the differences in the perils insured against. In their brief defendants state: "If the property was totally destroyed, he [plaintiff] must prove that fact * * *." We think that what constitutes a "total destruction" under the policies is a question of fact reasonably to be determined in the light of all the circumstances and the nature of the risk insured against. This determination is not, as defendants seem to imply, a rigid classification of law.

The defendants rely strongly upon *Weaver* v. *Miner*, R. I., 112 Atl. 425. This was an action of the case for negligence resulting from a collision between the plaintiff's team and the defendant's automobile. The plaintiff had failed to show the cost of repairing his wagon or the value of the wagon after the collision. A new trial was granted because of the insufficiency of the evidence to furnish a basis for the assessment of damages. We think that case is clearly distinguishable from the case at bar. The physical damage to the wagon in the *Weaver* case was specifically shown to be partial. Furthermore, that case was concerned with the burden of proving compensatory damages proximately resulting from negligence. In the cases at bar,

plaintiff was proceeding on an agreement by each defendant to indemnify plaintiff "to the extent of the actual cash value of the property at the time of loss * * *." In order to fix damages herein, the jury had only to determine whether plaintiff had suffered a "loss" which would entitle him to the amount which each defendant had agreed to pay.

The trial justice charged the jury as follows: "The Court instructs the Jury that if the Jury believes from the evidence that the shoes, handbags, and hosiery was destroyed by wind storm, then it will be for the Jury from the evidence to find how much of said merchandise was destroyed and the cash value of said merchandise destroyed." The effect of this charge was to permit the jury to award damages to the plaintiff only if they found as a fact that the property was "destroyed." Because of the limiting effect of this charge, we cannot accept the defendants' suggestion that the verdicts may have been based upon a finding of partial damage only, in which case there would be insufficient evidence to assess damages. It seems clear that the quoted charge restricted the jury to awarding damages only for such loss as is supported by legal evidence in the record.

In each case all of the defendant's exceptions are overruled, and each case is remitted to the superior court for entry of judgment on the verdict.

*Thomas W. Pearlman,* for plaintiff.

*Sherwood & Clifford, Kirk Hanson,* for defendants.